IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LILLIAM HERNANDEZ, | : | |
| | : | |
| Plaintiff, | : | Case No.: |
| | : | |
| v. | : | |
| | : | |
| PAULA DEVLIN, individually and in her capacity as Classification Officer for the State of New Jersey Department of Corrections Edna Mahan Correctional Facility | : | Civil Action |
| | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |

# COMPLAINT

Now comes Plaintiff Lilliam Hernandez, by and through her undersigned counsel, and for her Complaint against Paula Devlin, individually and in her capacity as Classification Officer for the State of New Jersey Department of Corrections Edna Mahan Correctional Facility, alleges as follows:

## NATURE OF ACTION

1. This is a civil action for damages and other relief, arising from Defendant's violation of Plaintiff's civil and constitutional rights, established under the Fourth and Fourteen Amendment to the Constitution of the United States, guaranteeing Plaintiff the right to be free from unreasonable seizure, and the right to due process. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and the laws of the State of New Jersey and seeks reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## PARTIES

2. Plaintiff Lilliam Hernandez ("Plaintiff" or "Ms. Hernandez") is an adult citizen of the State of New York domiciled at 1938 Webster Avenue, Bronx, New York 10457.

3. Defendant Paula Devlin ("Defendant" or "Devlin") is, and was at all material times hereto, a Classification Officer employed in that capacity by the State of New Jersey Department of Corrections Edna Mahan Correctional Facility.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 in that Plaintiff's claims arise under 42 U.S.C. § 1983.

5. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different states.

6. This Court has subject matter jurisdiction of Plaintiff's corresponding state law claims pursuant to 28 U.S.C. § 1367(a) in that such claims are so related to the claims arising out of 42 U.S.C. § 1983 that they form part of the same case or controversy under Article III of the United State Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) since a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

8. At all material times hereto, Defendant acted "pursuant to" or "under color of" state law, as those terms are construed pursuant to 42 U.S.C. § 1983.

## STATEMENT OF FACTS

9. Plaintiff, Lilliam Hernandez, was sentenced to serve a three (3) year prison term, which commenced on April 10, 2017.

10. Plaintiff, Ms. Hernandez was taken into custody at Edna Mahan Correctional Facility ("EMCF") at this time.

11. EMCF is New Jersey's only prison facility for state-sentenced women prisoners, and houses women of all custody levels.

12. Without any time adjustments, Ms. Hernandez's three (3) year maximum prison would have expired on April 9, 2020.

13. Prior to arriving at EMCF, Ms. Hernandez served 364 days at Camden County Jail.

14. To promote equal treatment of criminal defendants who are released before their trial, and those who are detained, the State of New Jersey allows for the provision of "jail credits".

15. "Jail credits" reflect the acknowledgement that a criminal defendant who is detained pretrial has already began to serve her incarceration sentence.

16. "Jail credit" is awarded by the sentencing court and cannot be changed by the New Jersey Department of Corrections.

17. Thus, jail credits are irrevocable.

18. New Jersey, like all states, have other mechanisms in place to reduce, as appropriate, the amount of time prisoners actually spend in prison by providing opportunities for inmates to earn "commutation credits", also known as "good time credits".

19. The State of New Jersey grants "good time credits" to inmates who attend substance-abuse counseling, take educational courses, or avoid serious disciplinary infractions.

20. "Good time credits" are revocable.

21. New Jersey Department of Corrections are authorized to revoke "good time credits" as a penalty for misconduct.

22. In order to restore "good time credits" that have been revoked, an inmate must be free of any disciplinary charge with a guilty finding for one (1) year.

23. After one (1) year free of any disciplinary charge with a guilty finding, an inmate is permitted to receive 25% of her lost "good time credits".

24. After a second consecutive year free of any disciplinary charge with a guilty finding, an inmate is permitted to receive 50% of her lost "good time credits".

25. After a third consecutive year free of any disciplinary charge with a guilty finding, an inmate is permitted to receive 75% of her lost "good time credits."

26. An inmate is not entitled to receive 100% of her "good time credits" back; 75% is the maximum permitted restoration.

27. Another mechanism in place to reduce, as appropriate, the amounts of time prisoners actually spend in prison is by providing opportunities for inmates to earn "work credits" and "minimum credits".

28. "Work credits" are earned at a rate of 1 credit for every 5 days worked.

29. "Minimum credits" are earned at a rate of 3 credits per month for the first 12 months of minimum custody, and a rate of 5 credits per month thereafter.

30. The sentencing court awarded Ms. Hernandez 364 days of "jail credit" for the time she spent at Camden County Jail before her prison sentence at EMCF began.

31. After application of her awarded "jail credit", her maximum incarceration date was adjusted to April 11, 2019 (364 days before her original flat maximum date of April 9, 2020).

32. While she was incarcerated at EMCF, Ms. Hernandez earned 157 "good time credits".

33. After application of her earned "good time credits", her maximum incarceration date was adjusted to November 5, 2018 (157 days before her adjusted maximum date of April 11, 2019).

34. After multiple disciplinary infractions, Ms. Hernandez lost all of her "good time credits".

35. This resulted in a reinstatement of the April 11, 2019 maximum release date.

36. However, while she was incarcerated, Ms. Hernandez also earned "work credits".

37. She earned a total of 42.37 "work credits".

38. After application of her "work credits", her maximum incarceration date was readjusted to February 27, 2019 (42.37 days before her adjusted maximum date of April 11, 2019).

39. These "work credits" were never forfeited.

40. In addition, while she was incarcerated Ms. Hernandez also earned 3 "minimum credits".

41. After application of her "minimum credits", her maximum incarceration date was readjusted to February 24, 2019 (3 days before her adjusted maximum date of February 27, 2019).

42. Despite this adjusted maximum incarceration date, Ms. Hernandez was not released from custody until March 26, 2019.

43. At all relevant times hereto, Defendant Paula Devlin was the Classifications Officer at EMCF.

44. As the Classifications Officer, Defendant Devlin was responsible for accurately calculating sentence expiration dates.

45. Despite having earned 42.37 "work credits", Defendant Devlin only credited Ms. Hernandez with 40.17 credits.

46. Similarly, despite multiple written inquiries from Ms. Hernandez regarding her maximum release date, and application of credits earned, Defendant Devlin only told Ms. Hernandez

about her "good time credits", and indicated she was not eligible for reinstatement of those credits until she was charge free for one (1) year.

47. While this is accurate, this completely and purposefully ignores the application of "work credits" and "minimum credits" that Ms. Hernandez earned and retained.

48. Therefore, despite not having had her "good time credits" reinstated, Ms. Hernandez was still entitled to her "work credits" and "minimum credits" being included in the calculation of her maximum release date, which would have given her a sentence expiration date of February 24, 2019 (April 11, 2019 less 42.37 days for earned "work credits" and less 3 days for earned "minimum credits).

49. Thus, Defendant Devlin refused to acknowledge and apply Ms. Hernandez's "work credits" and "minimum credits" in her calculation of Ms. Hernandez's maximum release date.

50. Ms. Hernandez also discussed her concerns regarding a potential miscalculation of her release date with her psychologist, Dr. Reed.

51. Dr. Reed attempted to discuss the accuracy of calculations on Ms. Hernandez's behalf with Defendant Devlin, but Defendant Devlin refused to do so.

52. Since Ms. Hernandez and Dr. Reed could not get Defendant Devlin to consider her request to review the accuracy of the calculation of her maximum release date, Ms. Hernandez also brought the issue to the attention of a Sergeant.

53. It was not until then, that she was finally instructed to go to the "max building", but was not told why.

54. When she got there, she was handed her release papers.

55. She was not permitted an opportunity to pack her belongings or bring anything with her.

56. Instead, she was told to leave in her inmate clothes.

57. Unidentified officers then permitted other inmates to go into Ms. Hernandez's room and take whatever they wanted, then disregarded the rest of her belongings, which included sentimental valuables.

58. This deliberately indifferent and/or intentional miscalculation resulted in Ms. Hernandez remaining unlawfully incarcerated against her will at EMCF for over one (1) month.

59. Defendant Devlin knew or should have known that her failure to accurately calculate and apply Ms. Hernandez's earned "work credits" and "minimum credits" would result in Ms. Hernandez being held past her maximum release date.

60. As a result of this over-incarceration, Ms. Hernandez suffered a deprivation of her rights and liberties, and suffered from emotional distress.

## CAUSES OF ACTION

### COUNT I: OVER-IMPRISONMENT (42 U.S.C. § 1983)

61. Plaintiff incorporates each and every allegation set forth in every one of the aforementioned numbered paragraphs as if fully set forth herein.

62. The conduct of Defendant Devlin as alleged in the afore-numbered paragraphs comprises of the unlawful over-imprisonment of Ms. Hernandez in violation of her right guaranteed under the Fourth and Fourteenth Amendment of the United State Constitution.

63. Specifically, Defendant Devlin caused Ms. Hernandez to remain in state custody for over one (1) month past her maximum release date.

64. As a result, Plaintiff was deprived of her rights and liberties and suffered the harms and damages alleged herein as a result of the violation of her Constitutional rights under the Fourth and Fourteenth Amendment.

## COUNT II: NEW JERSEY CIVIL RIGHTS ACT (N.J.S.A. § 10:6-2)

65. Plaintiff incorporates each and every allegation set forth in every one of the aforementioned numbered paragraphs as if fully set forth herein.

66. At the time of the incident, as a citizen of the State of New Jersey, Ms. Hernandez was entitled to the protections of the New Jersey Constitution.

67. Defendant Devlin violated Ms. Hernandez's substantive due process rights.

68. Defendant Devlin was acting under color of state law when she caused Ms. Hernandez to remain in state custody one (1) month past her maximum release date.

69. As a result, Plaintiff was deprived of her rights and liberties and suffered the harms and damages alleged herein as a result of the violation of her Constitutional Rights under the New Jersey Constitution.

## COUNT III: FALSE IMPRISONMENT (New Jersey State Law)

70. Plaintiff incorporates each and every allegation set forth in every one of the aforementioned numbered paragraphs as if fully set forth herein.

71. Defendant Devlin's failure to properly calculate Mr. Hernandez's release date as alleged in the afore-numbered paragraphs comprises of false imprisonment under New Jersey law.

72. Plaintiff was unlawfully confined to EMCF past her maximum release date, and did not consent to such confinement.

73. Defendant Devlin intentionally kept Ms. Hernandez in custody.

74. Ms. Hernandez was well aware that she was in custody and not free to leave.

75. As a result, Plaintiff was deprived of her rights and liberties and suffered the harms and damages alleged herein as a result of Defendant's conduct.

## DEMAND FOR JURY TRIAL

76. Plaintiff hereby demands trial by jury on all issues set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant and asks the Court to provide the following relief:

a) An award of general and compensatory damages;

b) An award of reasonable attorneys fees and litigation expenses pursuant to 42 U.S.C. § 1988;

c) Such other interest and costs as are allowed by law; and

d) Such other relief that the Court deems just and equitable.

Dated: February 11, 2021

WILLIAMS CEDAR, LLC
*/s/ Gerald J. Williams*
Gerald J. Williams, Esquire
*/s/ Shauna L. Friedman*
Shauna L. Friedman, Esquire
8 Kings Highway West, Suite B
Haddonfield, NJ 08033
(856) 470-9777
(888) 311-4899 (fax)
Gwilliams@williamscedar.com
Sfriedman@williamscedar.com
Attorneys for Plaintiff

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

Undersigned counsel certifies that there are no actions pending involving the same subject matter of this controversy.

Undersigned counsel further certifies that there are no additional known parties who should be joined to the present action at this time.

I certify the forgoing to be true and I am aware that if the above is willfully false, I am subject to punishment.

Dated: February 11, 2021

WILLIAMS CEDAR, LLC
*/s/ Gerald J. Williams*
Gerald J. Williams, Esquire
*/s/ Shauna L. Friedman*
Shauna L. Friedman, Esquire
8 Kings Highway West, Suite B
Haddonfield, NJ 08033
(856) 470-9777
(888) 311-4899 (fax)
Gwilliams@williamscedar.com
Sfriedman@williamscedar.com
Attorneys for Plaintiff