**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**LILLIAM HERNANDEZ**,

        Plaintiff,

v.

**PAULA DEVLIN**,

        Defendant.

Civil Action No. 21-2394 (ZNQ) (DEA)

**OPINION**

**QURAISHI, District Judge**

    Plaintiff Lilliam Hernandez, a former inmate at Edna Mahan Correctional Facility for Women ("EMCF") in Clinton, New Jersey, is proceeding with a civil rights complaint pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. §§ 10:6-1 to 10:6-2. (Compl., ECF No. 1.)  Before the Court is Defendant Paula Devlin's motion for summary judgment (the "Motion").  (Mot., ECF No. 16.)  For the reasons below, the Court will grant the Motion and enter summary judgment in Defendant's favor.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

    This is an "over-detention" case.  Plaintiff alleges that she was incarcerated past the maximum expiration date of her sentence because Defendant, an employee of the EMCF's Release

Unit,[1] refused to include work and minimum custody credits[2] in her sentence calculation that she claims she earned while incarcerated at EMCF, which would have shortened her sentence by approximately one month. (*See* Compl. ¶¶ 43–49.) Defendant concedes that Plaintiff was detained beyond her maximum sentence date but contends she was not responsible for the over-detention. (Br. in Supp. 1, ECF No. 16-1.) Instead, Defendant asserts that sentence calculations performed by other EMCF employees mistakenly included an expired sentence, which caused Plaintiff's over-detention. (*Id.*)

It appears that the parties now agree that the cause of Plaintiff's over-detention was the inclusion of the expired sentence in the sentence calculation. (*See* Pl.'s Responsive Statement of Material Facts ("Pl.'s SUMF") ¶ 23, ECF No. 18 Section II ("Admitted that based upon

---

[1] As explained in greater detail below, the Release Unit prepares sentence calculations at certain times during an inmate's incarceration.

[2] New Jersey allows for the provision of "jail credits," "gap-time credits," "commutation credits," "work credits," and "minimum credits" in calculating an inmate's sentence. (*See* Compl. ¶¶ 14, 19, 27; Answer ¶¶ 14, 19, 27, ECF No. 5.)

A sentencing court awards jail credits for time a defendant spends incarcerated prior to trial and sentencing. (Compl. ¶ 15; Answer ¶ 15.) Where a defendant faces multiple sentences, once the first sentence is imposed, a defendant awaiting sentencing on other charges accrues "gap-time credits." *See* N.J. Stat. § 2C:44-5(b)(2).

The New Jersey Department of Corrections ("NJDOC") grants "commutation" or "good time" credits to inmates who attend substance-abuse counseling, take education courses, or avoid serious disciplinary infractions. (Compl. ¶ 19; Answer ¶ 19.) "Good time credits" are revocable, and the DOC may revoke "good time credits" as a penalty for misconduct. (Compl. ¶¶ 20–21; Answer ¶¶ 20–21.)

The NJDOC awards "work credits" to inmates employed in jobs or assigned to vocational and/or mandatory educational programs. *See Understanding the New Jersey Department of Corrections Prison System: A Resource Guide for Family Members of the Incarcerated* 5 (2019), https://www.nj.gov/corrections/pdf/OTS/InmateFamilyResources/Family%20Resource%20Guide%20Rev%2005-2019.pdf. Similarly, the NJDOC awards "minimum credits" to inmates whose custody status permits them to perform activities or jobs outside the security perimeter of the correctional facility or community-based jobs. *See id.*

2

[Defendant's] late acknowledgement of the calculation error involving the expired . . . sentence, Plaintiff was released from custody on March 26, 2019.").)  However, the parties continue to dispute whether Defendant is responsible for this error.

By way of background, the EMCF has two units that prepare sentence calculations during an inmate's incarceration: the Classification Unit and the Release Unit.  (*See* Def.'s Statement of Material Facts ("Def.'s SUMF") ¶ 5, ECF No. 16-5; Pl.'s SUMF ¶ 5.)  The Classification Unit and Release Unit collectively prepare at least three different sentence calculations.  (Def.'s SUMF ¶ 5; Pl.'s SUMF ¶ 5.)

The Classification Unit prepares the first sentence calculation at intake, when the NJDOC takes custody of the inmate.  (Def.'s SUMF ¶ 6; Pl.'s SUMF ¶ 6.)  Approximately six months prior to an inmate's maximum sentence date, (*see* Sim Dep. 35:19–23, ECF No. 16-3 Ex. N), the Release Unit prepares another sentence calculation for the Civil Commitment Review Committee ("CCRC"), which meets to discuss whether an inmate should be considered for civil commitment at the expiration of their criminal sentence.  (Def.'s SUMF ¶ 7; Pl.'s SUMF ¶ 7.)  The Release Unit also prepares another sentence calculation approximately one week prior to the expiration of the inmate's maximum sentence date for the Institutional Release Committee ("IRC"), which is responsible for verifying an inmate's release date.  (Def.'s SUMF ¶ 8; Pl.'s SUMF ¶ 8.)

In this matter, a Burlington County judge sentenced Plaintiff on February 24, 2017 to serve 180 days in the county jail for receiving stolen property.  (Def.'s SUMF ¶ 1; Pl.'s SUMF ¶ 1.)  Although the judgment of conviction indicated that Plaintiff had accrued 100 days of combined jail and gap-time credits for time spent incarcerated prior to sentencing, it did not indicate that Plaintiff had also earned work credits while at the county jail.  (*See* J. of Conviction, ECF No. 16-2 Ex. A.)  With all credits included, the Burlington County sentence expired on March 9, 2017.

(*See* Def.'s SUMF ¶ 16; Pl.'s SUMF ¶ 16.)  Nonetheless, Plaintiff remained in jail pending sentencing on other charges.

On April 10, 2017, a Camden County judge sentenced Plaintiff to a three-year custodial term for burglary. (Def.'s SUMF ¶ 3; Pl.'s SUMF ¶ 3.) On the same day, the NJDOC took custody of Plaintiff and transferred her to EMCF. (*See* Compl. ¶ 10; Answer ¶ 10.) None of the documents provided to EMCF by Burlington County officials upon Plaintiff's transfer indicated that Plaintiff had earned work credits while at the county jail. (*See* Def.'s SUMF ¶ 21; Pl.'s SUMF ¶ 21.)

Krista Arnold of the Classification Unit at EMCF prepared Plaintiff's initial sentencing calculation upon intake. (Def.'s SUMF ¶ 9; Pl.'s SUMF ¶ 9.) According to Defendant, Arnold, unaware of the county jail work credits, mistakenly believed that the Burlington County sentence was still active when the Camden County judge sentenced Plaintiff and, therefore, incorrectly included it in the intake calculation. (*See* Def.'s SUMF ¶ 10.)

On December 26, 2018, the Release Unit performed the sentence calculation for the CCRC. (Def.'s SUMF ¶ 11; Pl.'s SUMF ¶ 11.) According to Defendant, Jim Imboden, Supervisor of the Release Unit and Defendant's supervisor at the time, misinterpreted Plaintiff's judgments of conviction as indicating that the Burlington and Camden County sentences ran consecutively and, like Arnold, mistakenly included the expired Burlington County sentence in the calculation. (Def.'s SUMF ¶ 12.) According to Plaintiff, however, Defendant was responsible for performing the CCRC calculation or for reviewing Jim Imboden's calculation. (*See* Pl.'s Supplemental Statement of Disputed Material Facts ¶ 11, ECF No. 18 Section III.) Regardless, as a result of the inclusion of the Burlington County sentence, the calculation incorrectly indicated that Plaintiff's maximum sentence was three years and six months. (Def.'s SUMF ¶ 13; Pl.'s SUMF ¶ 13.) With the credits that Plaintiff had earned and was projected to earn while at EMCF, her projected release

date, based on the incorrect calculation, was April 1, 2019. (*See* Def.'s SUMF ¶ 13; Pl.'s SUMF ¶ 13.) In fact, Plaintiff's release date should have been in late February or early March 2019. (*See* Def.'s SUMF ¶ 24; Pl.'s SUMF ¶ 24.)[3]

On March 26, 2019, Defendant performed the sentence calculation for the IRC. (Def.'s SUMF ¶ 16; Pl.'s SUMF ¶ 16.) While performing the calculation, Defendant accessed the County Correction Information System ("CCIS"),[4] though she was not required to do so, and it was not standard policy or procedure at that time to run a CCIS check for a sentencing calculation. (Def.'s SUMF ¶ 17; Pl.'s SUMF ¶ 17.) While searching CCIS, Defendant discovered that Plaintiff had earned county jail work credits while she was serving the Burlington County sentence. (Def.'s SUMF ¶ 21; Pl.'s SUMF ¶ 21.) At that moment, Defendant became aware that the Burlington County sentence had expired prior to the imposition of the Camden County sentence, (Def.'s SUMF ¶ 16; Pl.'s SUMF ¶ 16), and, therefore, should not have been included in Plaintiff's sentencing calculation. Realizing this error, Defendant effectuated Plaintiff's release from custody that day. (Def.'s SUMF ¶ 24; Pl.'s SUMF ¶ 24.)

On February 11, 2021, Plaintiff initiated this action by filing the Complaint with the Court. (*See* Compl.) The Complaint raises three claims against Defendant: (1) an over-detention claim pursuant to 42 U.S.C. § 1983; (2) an over-detention claim pursuant to the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. §§ 10:6-1 to 10:6-2; and (3) a false imprisonment claim under New Jersey law. (*See id.*) Plaintiff later voluntarily withdrew her false imprisonment claim. (*See* Opp'n Section V.C., ECF No. 18.)

---

[3] The parties dispute what her actual release date should have been, but it is sufficient for the purpose of this Opinion that the parties agree that the actual release date should have been before March 26, 2019.

[4] CCIS provides information about county jail sentences, including any work credits earned by an inmate while serving a county jail sentence. (Def.'s SUMF ¶ 18; Pl.'s SUMF ¶ 18.)

On March 30, 2021, Defendant answered the Complaint, and the matter proceeded to discovery. (*See* Answer, ECF No. 5.) Discovery concluded on December 15, 2021. (*See* Oct. 24, 2021 Text Order, ECF No. 14.)

On January 28, 2022, Defendant filed the instant motion for summary judgment. (*See* Mot.) Plaintiff submitted her opposition to the Motion on February 21, 2022, (*see* Opp'n), and Defendant replied on March 4, 2022, (*see* Reply, ECF No. 21.) Accordingly, the matter is ripe for determination.

## II.  LEGAL STANDARD

A court should grant summary judgment if the evidence in the record, viewed with all reasonable inferences in favor of the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989). An issue is "genuine" only if a reasonable jury could possibly find in the non-movant's favor on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is "material" only if it influences the outcome under the applicable law. *Id.* at 248.

The moving party bears the initial burden of informing the district court of the basis for its motion and demonstrating either (1) that there is no genuine issue of fact and that as a matter of law, the moving party must prevail, or (2) that the nonmoving party has not shown facts relating to an essential element of the issue for which he bears the burden. *Celotex*, 477 U.S. at 323, 331. Once either showing is made, the burden shifts to the nonmoving party, who must demonstrate facts which support each element for which he bears the burden and establish the existence of genuine issues of material fact. *Id.* To satisfy this burden, the non-moving party "may not rest

upon the mere allegations or denials of his pleading," Fed. R. Civ. P. 56(e), and he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993). The non-moving party must go beyond the pleadings and point to specific factual evidence showing there is a genuine material issue for trial. *Celotex*, 477 U.S. at 323–24. This is a rigorous burden for the non-movant: he must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatte v. N.J. State Police*, 71 F. 3d 480, 484 (3d Cir. 1995). Speculation and conjecture will not suffice. *See Jackson v. Danberd*, 594 F.3d 210, 227 (3d. Cir. 2010).

### III. DISCUSSION

In the Motion, Defendant argues that Plaintiff has failed to establish the elements of her over-detention claims, including establishing that Defendant was deliberately indifferent to Plaintiff's rights. (*See* Br. in Supp. 13–20.) Defendant also argues that she is entitled to qualified immunity. (*See id.* at 20–26.) As the Court concludes that Defendant's first argument warrants summary judgment in her favor, the Court does not reach Defendant's second argument as to qualified immunity.

#### A. Deliberate Indifference

Plaintiff brings her over-detention claims pursuant to 42 U.S.C. § 1983 and the NJCRA.[5] (*See* Compl. 7–8.) To succeed on a Section 1983 claim, a plaintiff must show: (1) that a person acting under color of state law committed the conduct complained of; and (2) the conduct deprived

---

[5] "Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart," Section 1983. *Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009). Accordingly, the Court will analyze Plaintiffs' NJCRA claim "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 417, 444 (D.N.J. 2011).

the plaintiff of a federally secured right.[6] *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1983). As Defendant does not appear to argue that she was not acting under color of state law, the only issue is whether her conduct deprived Plaintiff of her rights. *See id.*

In the Complaint, Plaintiff submits that Defendant's conduct violated her substantive due process rights under the New Jersey Constitution and the Fourth and Fourteenth Amendments of the United States Constitution. (*See* Compl. 7–8.) Defendant contends, however, that under the "more-specific provision rule"[7] and Third Circuit caselaw, the Court should analyze Plaintiff's over-detention claims under the Eighth Amendment of the United States Constitution. (*See* Br. in Supp. 14–15.) As Plaintiff does not contest this argument in her opposition, the Court analyzes Plaintiff's claims under the rubric of the Eighth Amendment.

An inmate's detention after the term of imprisonment is complete, under certain circumstances, can constitute cruel and unusual punishment in violation of the Eighth Amendment. *Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010). To prevail on an over-detention claim, a plaintiff must show: (1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal

---

[6] The NJCRA additionally provides a cause of action for a violation of a right under the New Jersey Constitution or New Jersey law. *See* N.J. Stat. § 10:6-2(c).

[7] The "more-specific provision rule" provides that, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standards appropriate to that specific provision, not under the rubric of substantive due process." *Warton v. Danberg*, 854 F.3d 234, 236 (3d Cir. 2017) (citations omitted).

connection between the official's response to the problem and the unjustified detention. *Montanez*, 603 F.3d at 252.

Here, Defendant contends that Plaintiff cannot establish that Defendant knew of any substantial risk of over-detention prior to accessing the CCIS on March 26, 2019 or that Defendant took ineffective action upon discovery of Plaintiff's county jail work credits. (*See* Br. in Supp. 18.) The Court agrees.

In her Statement of Material Facts, Defendant asserts that, prior to March 26, 2019, Defendant was not aware that the Burlington County sentence had expired prior to the imposition of the Camden County sentence. (Def.'s SUMF ¶ 25.) She also asserts that she first became aware that the Burlington County sentence had expired prior to the Camden County sentence on March 26, 2019. (*Id.* ¶ 16.) Defendant properly supports these assertions with her deposition testimony, in which she stated that she only discovered the error on March 26, 2019, and with an email from Jacqueline Sim, Defendant's supervisor at the time,[8] on March 27, 2019, in which Sim explains that Defendant discovered the error during the IRC review, which took place on March 26, 2019. (*See id.* ¶¶ 16, 25.)

In Plaintiff's response to Defendant's Statement of Material Facts, Plaintiff concedes that Defendant became aware on March 26, 2019 that the Burlington County sentence had expired prior to the imposition of the Camden County sentence. (*See* Pl.'s SUMF ¶ 16 ("Admitted that [Defendant] became aware on March 26, 2019 that Plaintiff's Burlington County sentence had expired prior to the imposition the Camden County Sentence . . . .").) Accordingly, the Court considers that fact undisputed for the purpose of this Opinion.

---

[8] Jacqueline Sim replaced Jim Imboden as Supervisor of the Release Unit upon his retirement in 2019. (*See* Devlin Dep. 18:5–14, ECF No. 16-2 Ex. C.)

Nevertheless, Plaintiff appears to argue elsewhere that a genuine issue of fact exists as to when Defendant knew that the Burlington County sentence had expired. (*See* Opp'n 17.) For example, Plaintiff argues that a worksheet that Defendant prepared during Plaintiff's CCRC review on December 26, 2018 offers circumstantial evidence that Defendant knew then that the Burlington County sentence had expired before the Camden County sentence began. (*See* Opp'n 17.) For context, it was Defendant's responsibility to notify the relevant prosecutor's offices of Plaintiff's projected release date after the CCRC review. (*See* Devlin Dep. 88:9–90:22.) On the day of Plaintiff's review, Defendant printed out an Inmate Agenda Worksheet. (*See id.* at 91:9–92:17; Inmate Agenda Worksheet, ECF No. 18-7.) Defendant made notes on it during her review. (*See* Devlin Dep. at 92:18–93:1.) Her handwritten notes show three prosecutors from Burlington, Camden, and Ocean County that she needed to notify regarding Plaintiff's projected release date. (*See id.*) "Burlington" is crossed out. (*See* Inmate Agenda Worksheet.) Defendant testified during her deposition that she did not know if she had crossed it out or why it was crossed out. (*See* Devlin Dep. 93:2–7.)

The inference Plaintiff seeks to draw is that Defendant crossed out "Burlington" during the CCRC review because she knew then that the Burlington County sentence had expired prior to the imposition of the Camden County sentence. However, Plaintiff's Progress Notes Report indicate that on the day after Plaintiff's CCRC review, Defendant sent notification letters to all three prosecutors, including the Burlington County prosecutor, with the incorrect release date. (*See* Progress Notes Report, ECF No. 16-2 Ex. G.) Had Defendant known then that the Burlington County sentence had expired prior to the Camden County sentence, there would have been no reason to send the notification letter to the Burlington County prosecutor. In fact, when Defendant learned of the calculation error, she sent an amended notification letter to the Camden and Ocean

County prosecutors, only. (*See id.*) Thus, even if Plaintiff had not conceded this point, the Inmate Agenda Worksheet would offer Plaintiff little support and would be insufficient, by itself, to create a genuine issue of fact.

Plaintiff also argues that, regardless of when Defendant became aware that the Burlington County sentence expired, "Defendant had knowledge of an unwarranted risk of over-detention" prior to March 26, 2019 because "she admits that despite knowing that [county jail work] credits are not reflected directly on a[] [judgment of conviction], it is not her practice to check [CCIS], which is the only place where such information would be found." (*See* Opp'n 11–12.) The problem with this argument is that it is not properly supported. Logically, demonstrating Defendant's knowledge of a substantial risk of over-detention in this manner would at least require a showing that Defendant was aware that the CCIS was the only place where such information could be found. However, Plaintiff has not offered sufficient evidence to make such a showing. (*See* Pl.'s Supplemental Statement of Disputed Facts ¶ 25.)[9] Without that showing, a reasonable jury could not conclude that Defendant knew of a substantial risk of over-detention simply because Defendant knew that work credits are not reflected on judgments of conviction and Defendant did not check the CCIS prior to March 26, 2019.

Finally, Plaintiff suggests that Defendant knew of a substantial risk of over-detention prior to March 26, 2019 because Plaintiff had sent numerous inquiries to officials regarding her eligibility for restoration of lost commutation time. (*See* Opp'n 12.) Between October 2017 and

---

[9] In support of Plaintiff's assertion that the CCIS "is the only place where such information would be found," Plaintiff merely points to Jacqueline Sim's testimony in which she testified that CCIS is the only place where county jail work credits would be reflected. Regardless of whether that is true, such evidence is insufficient to establish that Defendant was aware of this purported fact. In fact, Defendant testified regarding her knowledge of another source of jail credit information. (*See* Devlin Dep. 130:7–131:6 (testifying that, when an inmate earned work credits at the county jail, the county jail would send that information to EMCF officials via a paper form).)

December 2018, Plaintiff submitted four internal remedy forms in which she questioned whether she was eligible for the restoration of lost commutation credits. (Def.'s SUMF ¶ 26; Pl.'s SUMF ¶ 26.) On one form, Plaintiff requested to meet with Defendant to talk "about this matter." (*See* JPay Inquiries, ECF No. 18-1 Ex. D.) Defendant responded to each of the forms and informed Plaintiff when she would be eligible for restoration of her commutation credits. (*See* Def.'s SUMF ¶ 27; Pl.'s SUMF ¶ 27.) Notwithstanding Plaintiff's argument to the contrary, a reasonable jury could not find that Defendant knew of a substantial risk of over-detention based on the inquiries because none of the inquiries related to the issue of work credits earned at the county jail or would have otherwise put Defendant on notice of an issue with Plaintiff's sentence calculation. (*See id.*)

As Plaintiff fails to demonstrate facts that suggest that Defendant knew of a substantial risk of over-detention prior to learning of the calculation error on March 26, 2019, Plaintiff's over-detention claims fail unless she shows that Defendant failed to act or took ineffective action on or after that day. However, Plaintiff fails to offer any evidence that Defendant failed to act or took ineffective action upon learning of the calculation error. Rather, the record shows that Defendant took the steps necessary to effectuate Plaintiff's release on the same day. (*See* Emails dated March 26 and 27, 2019, ECF No. 16-2 Ex. H.) Accordingly, as Plaintiff cannot demonstrate facts supporting each element of her claims, Defendant is entitled to summary judgment in her favor.

### IV. CONCLUSION

For the reasons above, the Court will grant Defendant's Motion and enter summary judgment in her favor. An appropriate order follows.

Date: August 30, 2022

s/ Zahid N. Quraishi  
**ZAHID N. QURAISHI**  
**UNITED STATES DISTRICT JUDGE**